Good afternoon, Mrs. Wakefield and Mr. Nesbitt. Unfortunately, we ran long on the last case that we just had, so I'm sorry to keep you guys waiting. We're ready to proceed with this case now. Good afternoon, Illinois Appellate Court, First District Court is now in session. The Sixth Division, the Honorable Justice Mary Mick for presiding, case number 1-9-1-9-0-7, People v. Brian Bernard McKinney. Good afternoon, counsel. Thank you for your patience. I would ask first for each of you to please state and spell your names for the record and let us know who you're representing. Assistant States Attorney Harina Megani-Wakely, H-A-R-E-E-N-A Megani-Wakely, M-E-G-H-A-N-I-Wakely, W-A-K-E-L-Y, representing the people of the state of Illinois. And you're the appellee in this case, correct? Yes. Okay. Good morning, Your Honors. My name is Brian Nesbitt, B as in boy, R-I-A-N-N-I-S-B-E-T. And Mr. Nesbitt, you're representing the appellate, correct? Correct. All right. I think that the way we're going to proceed this afternoon is to allow each of you only about five minutes of uninterrupted time just to highlight your main points. We've all read the briefs, of course. And then we will open it up one at a time for questions beginning with Justice Griffin, then Justice Connors, and then myself with any remaining questions. Mr. Nesbitt, would you like to reserve some, you don't have to reserve any of that five minutes, but would you like to say have a couple minutes for rebuttal in this case? Yeah, sure. Of course. Okay. Try to keep your rebuttal to about three minutes if that's all right. Understood. Okay. All right. You may proceed whenever you're ready with highlighting what it is. So, the issue today is whether or not the trial court abused its discretion in sentencing McKinley to a 39-year, excuse me, prison term, just one year short of a de facto life sentence for a juvenile offender. We believe he did for three reasons. The first reason, Your Honor, is that the trial court failed to properly consider McKinley's youth. And considering his age, he concluded the defendant was only 16 years old, the gun made him older. The second reason is that trial court failed to properly consider the impact peer pressure had on McKinley's immature mind. Instead, finding that McKinley gained strength from his gang, gained strength from his pack. He cited the factor essentially in aggravation and not in mitigation, which is contrary to the law in Miller and Buffer. And finally, at its core, Your Honor, the third reason, at its core, the spirit and purpose of Miller and Buffer is to recognize that juvenile offenders are constitutionally unique and to therefore allow them a real opportunity to be rehabilitated and released and contribute to society. McKinley is exactly the type of defendant that Miller and Buffer contemplate. He has an impeccable track record of rehabilitation over the last 20 years. He has never been in trouble in prison. He has worked in prison, receiving high marks from two correctional officers that testified on his behalf. He achieved numerous developmental and professional certificates, including becoming a paralegal. He's educated himself and been accepted into several rigorous academic programs. He is currently working toward his obtaining his bachelor's degree from Northwestern University. A near-life sentence here does not make any sense. It does not serve the constitutional mandate set out in Miller and Buffer. If I could just address those three points a bit more specifically, Your Honor. First, his age. The court's ultimate, it's well-known, it's well-established. Children are constitutionally different from adults for the purposes of sentencing. Age is not just a number. It's not just a chronological fact. It's a multifaceted set of attributes that has to be considered in sentencing a juvenile, even within the statutory limits. And here, the trial court simply failed to do that. The court recognized that he was 16 years old, that evidence had been presented, but then discounted it in a way that is entirely antithetical to the law set out in Miller and Buffer. The fact that McKinley had a gun does not make him older. It does not make him more mature. It does not make him more mentally able to appreciate the consequences or walk away from the circumstances that resulted in this tragedy. And Miller and Buffer require the court to analyze how him being 16 impacted him having the decision to have a gun. Trial court here did the opposite, wholly discounting his youth because he had the gun. And in his view, that gun made him older. The state doesn't really dispute that on its face, the court's statement is inconsistent with the spirit and purpose of the law. The state suggests and argues that it doesn't really reflect what the court meant or believed. But the court's language is plain. I mean, what else could it mean? It acknowledges age and dismissed it as dismissed McKinley being 16 because he had a gun. And that statement is all that should mitigate his sentence. Again, it's well established, of course, you know, Miller and Holman observe that children are more vulnerable to negative influences and outside pressures, including from their their peers. And that's why it's considered as mitigation and understanding how a juvenile should be sentenced. Here, the trial court turned that law on its head. The record evidence is clear that McKinley's fellow gang member instructed McKinley to shoot the victim. He shot the victim pursuant to that instruction. It's not to say McKinley is avoiding taking personal responsibility for his crimes. He is. He did. He did that at the resentencing hearing. But peer pressure had a role. And the court instead of analyzing how McKinley's youthful mind might have been impacted by that, he instead cited it basically an aggravate aggravation, noting that McKinley gained strength from the gang and gained strength from his pack. Finally, Your Honor, the foundational principle, the basic spirit of Miller and Buffer is that juveniles are constitutionally unique. And for those who are not incorrigible, they must be given some meaningful opportunity to be rehabilitated. Here, a light, basically a life sentence for one year short of a life sentence doesn't serve that purpose. It makes no sense if there's not. McKinley is exactly the defendant that is supposed to be served by Miller and Buffer. And even the state recognized that the state recognized it's his impressive record of rehabilitation and suggested or requested that he only be served to something substantially more than the minimum, which is not that far off from what what we requested, which was twenty five years. State never asked for anything close to the maximum, didn't ask for anything near thirty nine years. And given his long history of rehabilitation, it just doesn't make any sense to serve him to thirty nine years. That was perfect in terms of staying within five minutes. Any question? We're faced with the situation that the court's sentencing decisions are entitled to great deference. That goes without saying. And unless there's an abuse of discretion, we have to recognize that now. And the seriousness of the crime is the most important factor to be considered. And the judge seemed to give great weight to the facts of the actual crime. The victim was shot in the back, turned around with his hands up and then shot several more times. How would you discuss or respond to the to the seriousness of the crime in light of the great deference that's supposed to be given at a trial court? I understand that, your honor. I don't quibble with that standard of review. The crime was horrific and serious. And McKinley admits that and he takes responsibility for that. But I think there are going to be very few first degree murders where the facts and circumstances don't appall or don't lend themselves to some serious concerns about their seriousness. And here, a life sentence doesn't make sense. It does not comport with the law, even given the facts due to McKinley's well-established record of rehabilitative potential. We also know, and we presented it to the trial court, evidence of other sentences being handed down in Miller type cases that are far lower than McKinley's that are in the 20 to 25 year range that involve multiple homicides. And so it's not just that we understand the court's concern and patient, but what I think the court did in looking at the seriousness of the crime erred in misapplying the two factors I discussed, his age and the role of peer pressure. And still, even with the seriousness of the crime, the sentence, it's an abuse of discretion, discretion, given the well documented record of rehabilitation. Thank you. I have no further. Justice Connors. Thank you, Mr. Nusbitt. We received a fairly recent request to supplement the brief by adding on a citation to people versus lesbian that we were asked to consider in deciding this case. Did you get a copy of that? And did you receive that motion? I did see that motion and I did read that case and I'm prepared to address it if you have any questions. Yeah. Do you have it? Does it have any effect on what we should consider here today? I don't. I don't think so, Your Honor. I did in their motion two reasons as to why it was relevant. The first was, quote, it instructs that a sentence is constitutional if the record demonstrates that the court received evidence relating to each of the Miller factors before imposing a sentence here. I mean, in addition to the facts, in addition to the facts of that crime and the defendant's rehabilitative potential in that case being very different from the facts in our case, we have affirmative statements by the court misapplying the Miller factors. And contrary to the state's suggestion, the law cannot be that any sentence is constitutional simply where the defendant presents evidence of on the Miller factors, regardless of how the court treats that evidence or how the court applies that evidence to the law in sentencing. The second reason why I believe that state thought it might be relevant to this particular case is that the state noted logic dictates that if the de facto 100 years imposed on the defendant in Lesby, who was also 16 years old at the time of his offense and who presented similar mitigation evidence, can pass constitutional Munster. The incident petitioner sentence of 39 years surely is capable of withstanding a constitutional challenge. I disagree with that. I think the whole point of Miller and Buffer is that logic cannot dictate the conclusion. The sentencing juveniles is not a cookie-cutter proposition. Each juvenile offender must be analyzed according to the facts and circumstances of his or her case. And here, as I discussed, the facts and circumstances do not warrant a near-life sentence. It's contrary to the spirit and purpose of the law, especially where McKinley has shown such powerful rehabilitative potential. Thank you, counsel. May I ask you as well, you cite Supreme Court rule number 615b-4, which suggests that the appellate court can reduce the punishment imposed by the trial court. Why would we consider that action in this case? Well, I think the court can do it for one or two reasons. First, we've already had the sentencing hearing and the record evidence is there in full. I'm not sure that the sentencing hearing, if it were to be remanded for another one, would be any different in terms of the evidence. This is also the second time that he will have been sentenced by Judge Wattis. The first time he was sentenced to 100 years. Now here, 39 years. I'm not sure it makes a ton of sense for us to go back to Judge Wattis for a third time. But I, of course, would defer to you all as how you would want to handle that in the event you rule in our favor. You don't come to a suggestion as to what you think an appropriate sentence would be, do you? Well, at the trial court, we asked for 25 years at the sentence in this case. Thank you, counsel. That's all. So is the thrust of your argument that this sentence is unconstitutional or that it was an abuse of discretion by the sentencing judge? An abuse of discretion by the sentencing judge, Your Honor. We understand and respect the law and buffer and understand that 40 years of the life sentence, it doesn't exceed that constitutional threshold, but it's really, really close. And that's why we think it's an abuse of discretion. Okay. And is the problem in your view that the Miller factors weren't considered or that they were improperly applied or some of them were improperly applied? I think it's more improperly applied. I mean, the court talks about his age. The court talks about his upbringing to some extent, but I do believe that they were improperly applied. And we know that through the court statements, the gun cannot make him older. The gun cannot make him more mature. Peer pressure is not supposed to give him strength. He's not supposed to be punished for giving into that susceptibility. It's a mitigating factor. So I think it's probably more precise to say they were inaccurately applied or inappropriately applied. And my last question is, do you have any response to the trial judge's statement that I may be pronouncing this wrong, but Dr. Garbarino was not a credible witness? Yes. We, of course, disagree with the court's assessment of Dr. Garbarino, but even taking the court's negative perception of him, it's sort of irrelevant to the issues that are here today. First, I mean, the court statements are the court's own statements, right? They're not really to Dr. Garbarino's testimony. And with respect to the trial court, the criticisms of Dr. Garbarino were somewhat superficial. He was off-put by the fact that Dr. Garbarino is notes from his meeting with Bernard McKinley and did not talk with anybody else about Bernard McKinley's upbringing. But there was no facts that were challenged. There was no underlying evidence that was fabricated anything in his report or that the upbringing didn't reflect the true circumstances of McKinley's youth. McKinley told the same thing to the probation officer. The two things are aligned. And then the third thing that really bothered the trial court was that Dr. Garbarino did not review the police reports, the underlying police reports of the crime. And that too is really irrelevant to the overarching analysis of whether this youthful individual who had a difficult upbringing, but had some support from his grandmother, but nevertheless had a difficult upbringing, was able to mentally calculate a situation where he's got group influence in sort of a gang situation that's escalating into conflict and violence. And so Dr. Garbarino knew the basics of the crime. He may not have known been able to recite the particulars necessarily, but it didn't really matter to what his testimony was there to provide. Thank you very much. Ms. Wakely. Good afternoon. The 39-year sentence in this case was not an murder. It was imposed after a comprehensive sentencing hearing where the court received an updated PSI. The court heard from five defense witnesses. The court received in numerous character letters, received victim impact statements, heard arguments in both mitigation and aggravation, allowed and heard defendants' allocution, and in imposing the actual sentence, addressed all of the mitigating factors and the juvenile factors regarding his decision on 39 years being the appropriate sentence in the case. In exercising properly his discretion, which due deference should be given to by this court, the court found that the seriousness of the crime warranted the sentence. And seriousness of the crime is the most important factor as recognized by our Supreme Court. Here, defendant was the initial aggressor and killed the victim for no reason. He approached the victim who was just simply out in a park wanting to play soccer. A confrontation ensued. Defendant opened fire in a public street with other people in the area and shot the victim six times. First, defendant shot the victim in the back as he was attempting to I give up. Defendant continued to shoot him until he dropped to the ground. As aptly characterized by the court in sentencing the 39 years, defendant's actions were heartless and merciless. And this is a court that had heard all of the trial evidence, viewed all of the witnesses, etc. As the court also found the need for deterrence warranted the sentence. It sends a situation where, as the court recognized, people cannot gun down unarmed people in the middle of a public street, in the middle of daylight, and a message does need to be sent. In imposing his sentence in and looking at all of the evidence, he also determined that there was enough mitigation to preclude even a greater sentence. I mean, as the court specifically noted, defendant's age, there was evidence of immaturity. Defendant clearly had rehabilitation potential, as the court noted, and said specifically, and I quote, there's no question about it. His family life, as the court noted, had a lot to be desired, and that his character and attitude showed that he was unlikely to commit another crime. So in using his discretion, the court considered also mitigation factor. By the same token, it found within its discretion, that some of the other juvenile factors either did not apply, or did not warrant a lesser sentence in this case. And on that issue, the defense put forth Dr. Garbarino, and asked the court to find him credible, and as his background to show how the 16 year old developmental stages at the time of the murder, justified all of the factors, and as the court said, I don't find him credible. That was the prerogative of the trial court, who had the opportunity to view the witness as he was testifying, to be subject to cross-examination, and to see how he responded when he was challenged regarding his findings. And as the court specifically found, this was a cutter, a cookie cutter type of analysis. I mean, first, as the court noted, he did not review any of the trial evidence. He didn't look at the police reports, not even meet with any of the family members. He only met with the defendant for two and a half hours, and then relied solely on what defendant told him, which in many aspects was contrary to the credible evidence established at trial, which the trial court heard. He also unexplained, other than this is my normal practice, knowing he was going to testify, the court did find it strange that he destroyed his notes of his interviews, something that generally would have been tender to the state. As I noted, the court basically looked at what he said, and said it was kind of like a cookie cutter analysis, trying to into each of the juvenile factors, and the court said it didn't work. Some of them just were not applicable. Defendant, as the court found, made certain choices. He appreciated the consequences of actually having a gun, and he was the initial aggressor. No abuse of discretion can be found on this record. Each and every factor that defendant now argues before this court was presented to the trial court and specifically considered, this court, as the Supreme Court has clearly said, should not substitute its judgment and reweigh these factors. And I believe the case that I cited recently, Lusby is instructive on that point. Lusby was a constitutional challenge by a juvenile to a sentence, which is not the case here, but what Lusby is instructive about is the juvenile factors, because a challenge was made that the lower court did not give enough weight, and that all of the juvenile factors that the defendant's assessment claim warranted a lesser sentence. And how did the Supreme Court look at that argument? It looked at what was presented before the trial court. Were all the evidence on the juvenile factors presented in one another? And they did a specific factor-by-factor analysis and found that a comprehensive hearing was held, and that the trial court did consider the juvenile factors. And I feel that it's, in my opinion, this case is also instructive because it, again, reemphasizing that this court should look at what was before the trial court. Did it use its discretion? Was the evidence considered? And should not substitute its opinion for that discretion. For those reasons, and those stated in our brief, as well as the motion for additional authority, we would ask that defendant's sentence be affirmed. Thank you. Excellent. Excellent keeping within the time as well. Justice Griffin. No, at the time of the sentencing, the state asked for a substantial period of time above the minimum. Is that 39 years? I'm sorry, the parameters are 20 to 60. We did not specify a specific term, but it was definitely not warranting 20. And so we left it for the court with the presentation of the aggravation, as well as the mitigation. The court found that there's rehabilitative potential. But yet, it didn't seem to give much credit to that. And, you know, we talk about sending a message to the community. What message are we sending to people when someone has an exemplary history while they're incarcerated, and yet end up with 39 years out of 40? And actually, well, Your Honor, with all due respect, the parameters for the sentencing was actually 20 to 60. And the fact that buffer came down for juveniles didn't change the fact that the parameters for a murder, it was still 20 to 60. I mean, what buffer did say was that when it hit the point of being 40 years, that is considered a de facto sentence, a life sentence for a juvenile. And then certain other cautionary things have to be done by the trial court before imposing something higher than 40 for a juvenile. But again, it did not change the fact that the defendant here could have been sentenced to 60. And in fact, the court did indicate, of course, thinking that he may stay within the buffer limitation for juvenile at 40. But said, if I had my way, he deserved more. And he justified that clearly. And by the seriousness factor, this this was a heinous crime. And yes, while there was productive life in prison that the defendant has demonstrated, that was but one factor. It's not the determining factor. It was a factor that was considered by the trial court. And the mere fact that he did not find that to be the end of the analysis does not show an abuse of discretion. In fact, it shows that he considered each and every thing and impose the sentence that was within the parameters that was after everything was presented. And so based on that, well, I also find the inconsistency, I think defendant was entitled to more time than 40 years, and then gives him 3039. I don't, how do you explain that inconsistency? Well, Your Honor, it's, it's clear that, well, based on my reading of his comments, that the the court was being cognizant of what buffer had said, and and use the 40 years that buffer had had spoken about in its decision to kind of make sure that that it stayed within the the buffer 40 years. And so it did put a ceiling of 40 years based on the court's comments, and and impose 39 saying that it was attempting to comply with buffer. But But of course, this was to the benefit of the defendant, where again, buffer did not change the parameters. And while the court may have sought to just stay within the buffer guidelines, that that was, again, to the benefit of the defendant, where, as the court said, I'm sticking to the buffer guidelines as I'm reading buffer. But if I, if buffer was not keeping me from doing it, I would have imposed a higher sentence. I don't see any inconsistencies there. While it could be a misinterpretation of buffer, that misinterpretation was to the benefit of the defendant. Thanks very much. I have nothing further. Thank you. Justice Connors. Thank you, Miss Wickley. Is there any reason to believe that Dr. Garbarino was unaware of the nature of the crime or the circumstances, even though we didn't read the police reports? Yes, absolutely. Because one of the main things that that the court clearly noted in its comment was that he based this when he was talking about peer pressure and what you know, having a detrimental lifestyle that causes people to congregate towards gangs and everything. He said, I mean, this is a prime example, this murder was a gang rivalry. And there was no absolutely no evidence that this was this murder was premeditated based on a gang rivalry that the victim was, you know, that the confrontation was gang related. And that was, of course, one, but but it was a big, a big factor that weighed into a lot of Dr. Garbarino's analysis of the juvenile factors. And the court was like that was what the defendant may have attempted to present as a defense theory, but that was rejected. And the credible witnesses testified that this wasn't a gang retaliation or gang shooting, or gang gang rivalry. Dr. Garbarino also testified that he usually destroyed his notes. He's been doing he Yeah, and you know, again, it was more, you know, that was just another factor. It wasn't the the sole factor, it came up on cross examination. And as the court who had the opportunity to watch the doctor as he was testifying, noted that, and as we asked juries to do to view witnesses credibility, his demeanor was confrontational, as noted in the record, you know, on cross examination, when he was being asked simple questions that he should have been prepared for on cross examination, yet the hostility that he was exhibiting. And one of those things just happened to be when the state asked about the notes and his, you know, hostility towards the fact that the notes were destroyed. It was just the one factor, but there was a lot of other factors, including the lack of consistency to the trial evidence or the lack of knowledge of what some of the trial evidence revealed. Okay, counselor, as far as deterrence, I think the trial court cited to deterrence as part of his reason for the sentence. Is that right? Yes. And doesn't Miller tell us that deterrence is not as strong as a factor that we're when we're considering a minor versus an adult. And at Miller, but it does. deterrence is always a factor in any sentencing, and Miller didn't get rid of that factor. What it did do was, it just says it's another factor to be considered. And as already indicated, the seriousness of the crime still is considered the most serious factor, which here in this case, the court did give that the most the most weight. But again, the comprehensive sentencing hearing presented the court with all of the relevant evidence, the same evidence that defense counsel now is asking this court to reweigh. And that included not only the seriousness and not only all the mitigation and not only the lack of mitigation, but also the need for deterrence. It's still a proper factor to be considered by the court. All right, counsel, my last question. Your opponent mentioned that the court did consider peer pressure. But did he consider it an aggravation or mitigation? The court, how should it be considered in a case like this? How did he do it? And what's proper standard? Well, it depends on the factual, the factual circumstances of the case in situation. I mean, over here, I believe, based on my reading of the record, as well as the court's comments, the court did note that with respect to peer pressure, this didn't start right when he said, shoot him, shoot him. I mean, defendant defendant was the aggressor way before that, when he initially confronted the victim and his his crew, then he actually waited outside the store that they were going into to simply buy a soccer ball. I mean, so the peer pressure was tied into the court's finding with he made choices. Yes, there were situations in his background that that did kind of allow him to be slightly using the term weaker and to gravitate towards maybe a negative influence. But in this case, that he was the mitigating factor based on the facts of the case. Thank you. Oh, yeah. Oh, I know you've done some thinking about this, I can tell it is a little  I think my internet connection is unstable. Let me try again. Sorry. Can you hear me now? Yes. After buffer, after buffer has held that a 40 year sentence is impermissible for a juvenile, unless who has rehabilitation potential. And there's been a finding in this case that this particular defendant had rehabilitation potential. And I think it's a finding that the state doesn't disagree with. Really, the outside limit is 40 years, correct? And that's the most that this defendant could constitute. I'm sorry, Your Honor, I'm not gonna be I'm sorry, Your Honor, I I'm having trouble. It's freezing on me. Am I the only one having trouble? I'm sorry. No, Justice Mikva, you're frozen. And I think she was asking you about the constitutionality. Something over 40. But let's wait till she unfreezes for a minute. Darren, are you on? Yes, I think Justice Mikva signed out. She's I'm here. All right. Repeat, Justice Mikva. Sorry. All right. Ms. Wakely, can you hear me? Yes. Okay. The question is, after buffer, if a defendant who committed a crime as a juvenile has real I'm sorry, you're frozen again. Still can't hear me. No. Try again, Mary. Make it a shorter question. Maybe. I'm sorry. Yeah. All right. Well, last time, would you agree that the most that this defendant could be given is 40 years constitutionally? No. And why is that? I mean, did I miss something? I'm sorry. Did I miss the rest of this sense? No. I mean, I tried to make it short, but this defendant had rehabilitation potential. The court found that. And you don't disagree with that. The state does not disagree. This defendant has rehabilitation potential, correct? That's the finding. Yes. Okay. And after buffer, if a defendant who committed a crime as a juvenile has rehabilitation potential, he can't be given a case. This is not a buffer situation. If one was to look at buffer and look at just cold saying a sentence of 40, is it below or above here? He got 39 years. And it's in keeping with however you read buffer, whether you read it as requiring something. So however you read buffer, in this within the parameters, it was imposed after all the factors were considered, including the juvenile factors. And I understand, but stay with me. Anything above 40 years would be unconstitutional under buffer. Would it not? No. Because Lusby tells us that it would not. It had to be. I'm sorry. Am I? No, I hear you. Okay. So your position is that you could still impose a sentence on this defendant of greater than 40 years constitutionally. That's how you read Lusby. That a 16 year old could get higher than 40 years under buffer. This 16 year old though, I'm saying this 16 year old, you're saying it would be constitutional to give this 16 year old more than 40 years. Well, I guess my question would be on resentencing. There's other constitutional barriers that would come in that, that he can't be, you know, given a higher sentence after the 39, because he took an appeal. You know, there's other, I think it's the right line of cases that come down. Right. But that's not what I'm saying. I'm saying this judge, the discretion that this judge had was 20 to 40. That's, and I'm saying, do you disagree? And you're saying yes, but I'm not understanding why. The only sentencing range before this judge. Tell me why. I didn't hear part of it, but I mean, I'm sorry. I didn't hear you froze again on my side. All right. I think, I think I understand your position. I'm going to let it go. I'm sorry. No, it's, it's my technical issues. All right. Um, uh, let's turn to. I think your honor was saying, let's turn to rebuttal. Um, so, so very briefly, your honor, and picking up on the point that you were just making the, I think the state agreed at the time and the court, I think agreed the maximum sentence this defendant could have received was 40 years. And, um, what the, the, uh, what the judge did was an abuse of discretion to give him 39 years where I, if, if, if not this defendant, then who, I can't imagine another scenario where a lesser sentence for this type of defendants, um, uh, with this defendant's rehabilitative potential would be more. Um, and so I, uh, uh, with that, your honor, um, and for the reasons stated, we, um, we think the sentence should be reduced and, ask for your, uh, guidance in that regard. Thank you both for a really excellent presentation. Apologize for the technical difficulties, very good briefing and argument on both sides. And we will take this matter under advisement.